# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| | CIVIL ACTION NO. |
| v. | |
| OSMOSE UTILITIES SERVICES, INC. | |
| | JURY TRIAL DEMAND |
| Defendant. | |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Decreshia Render ("Render"), who was adversely affected by them. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Osmose Utilities Services, Inc. ("Defendant") discriminated against Render when it denied her request for a reasonable accommodation and terminated her employment because of her disabilities, in violation of the ADA. The EEOC also alleges that Defendant retaliated against Render for engaging in protected activity, also in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant Osmose Utilities Services, Inc. is a national provider of services and products to utility companies in support of their infrastructures,

2

including inspection, treatment, and restoration to wood poles and steel structures.

5. At all relevant times, Defendant has conducted business in the State of Georgia and has continuously maintained at least 15 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

7. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Render filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendant.

9. On November 28, 2023, the Commission issued a Letter of Determination finding reasonable cause to believe that the ADA had been violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The EEOC engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. On March 14, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit are fulfilled.

## STATEMENT OF FACTS

13. Render is a qualified individual with disabilities under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

14. Render has physical impairments, including but not limited to, permanent loss of peripheral vision, headaches, blurred vision, and memory loss, related to a stroke and head injury, which substantially limit her in at least, but not limited to, the following major life activities: the normal functioning of her brain and neurological system, and her ability to see and concentrate.

15. Render has suffered from these physical impairments since at least July 2019.

16. Render was hired by Defendant on or about March 12, 2018, as a

One Call Locator at Respondent's office in Peachtree Corners, Georgia.

17. As a One Call Locator, Render was responsible for responding to customer inquiries, including calling in or electronically entering tickets for pole reinforcing and inspection candidates.

18. In or about April 2019, Render's entire department was required to work from home for one to two months while its office was relocated.

19. In or about July 2019, a few weeks after Render's department returned to work at the office in-person, Render suffered a stroke and head injury at work. An ambulance was called to the scene and Render was admitted to the hospital.

20. Beginning on or about July 16, 2019, Render took 12 weeks of FMLA leave due to her stroke, head injury, and resulting impairments.

21. Render was cleared to return to work in September 2019.

22. However, in or about August 2019, before returning from FMLA leave, Render reached out to her supervisor and requested to work from home as a reasonable accommodation because she could not drive and the overhead lights in the office exacerbated the intensity of her headaches.

23. Render was required to attend frequent medical appointments,

including physical therapy appointments at her doctor's office that was near her home in Newnan, Georgia, but was over an hour away from Respondent's office. The accommodation that Render requested would have made it unnecessary for Render's friend to drive her to work and to her medical appointments on the same day.

24. Defendant's Operations Manager denied Render's request for an accommodation.

25. Render returned to work from FMLA leave on September 9, 2019.

26. Shortly thereafter, Render asked to work from home again as a reasonable accommodation, altering her request to work remotely to two or three days per week on the days she had physical therapy appointments.

27. Render's second accommodation request was denied, but she was told that she could take leave to attend her medical appointments.

28. Despite being granted use of her leave for appointments, Defendant's management complained about Render leaving work early for physical therapy appointments.

29. Render's supervisor began pressuring Render to end her physical therapy treatment prematurely and frequently questioned Render about her appointments.

30. On or about October 24, 2019, six weeks after returning to work from FMLA leave, Render was discharged.

31. Render was not given a reason for her discharge at the time.

32. Defendant later cited Render's February 2019 annual performance review as the reason for her discharge.

33. Render's February 2019 annual performance review did not indicate any performance problems that would warrant Render's termination.

34. Render's February 2019 performance rating was an overall assessment of "Meets Standards."

35. Render never received any warnings, write-ups, or disciplinary actions during her employment with Defendant.

36. Other similarly situated employees were given progressive disciplinary actions, including write-ups, prior to any termination.

37. Render was replaced by an employee outside of her protected class.

38. Defendant has not articulated any undue hardship that Render's requested accommodations would have pose.

## STATEMENT OF CLAIMS

39. Since at least August 2019, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. §

12112(a) and (b). These unlawful employment practices include but are not limited to: (1) unlawfully failing to provide a qualified employee with disabilities a reasonable accommodation; (2) unlawfully terminating a qualified individual because of her disabilities; and (3) retaliating against an employee for engaging in protected activity.

40. The EEOC realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39 as if fully asserted herein.

### *Allegations Common to All Claims*

41. Render is a qualified individual with disabilities under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

42. At all times relevant to this action, Render was able to perform the essential functions of her position with a reasonable accommodation.

43. Defendant's actions taken with respect to Render, as described above, were taken and/or ratified by individuals within sufficiently elevated company leadership so as to be attributable to Defendant.

### *Failure to Accommodate*

44. Render timely identified and requested reasonable accommodations that would have allowed her to perform the essential functions of her job.

45. Render's requested accommodations were reasonable.

46. Defendant unreasonably denied Render's requested accommodations.

47. Defendant failed to conduct a reasonable investigation into Render's requested accommodations and failed to meaningfully interact with or engage with Render or anyone on Render's behalf related to the requested accommodations.

48. Defendant failed to grant the accommodations to Render that would have allowed her to perform the essential functions of her job.

### *Discriminatory Termination*

49. Defendant terminated Render because of her disabilities and/or need for a reasonable accommodation.

50. The effect of the practices complained of above has been to deprive Render of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities.

51. The unlawful employment practices complained of above were intentional.

52. The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Render's federally protected rights.

### *Retaliation*

53. Defendant retaliated against Render for engaging in protected activity.

54. Render engaged in statutorily protected activities when she requested an accommodation for her disabilities.

55. Render's supervisor denied Render's reasonable accommodation request of working from home, repeatedly complained about Render needing to leave early to attend physical therapy, and pressured Render to end her physical therapy treatment prematurely.

56. Render suffered a materially adverse employment action when Defendant terminated Render's employment.

57. A causal connection can be established due to proximity of events.

58. The effect of the practices complained of above has been to deprive Render of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected activity.

59. The practices complained of above were intended to create a chilling effect on Render's use of her rights to a reasonable accommodation.

60. The unlawful employment practices complained of above were intentional.

61. The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Render's federally protected rights.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with Defendant, from denying reasonable accommodations to disabled employees, terminating employees because of their disability, retaliating against employees for engaging in protected activities, and engaging in any employment practice which discriminates on the basis of disability.

B.     Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees with disabilities, including those who request reasonable accommodations in the workplace, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Render whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including, but not limited to reinstatement or front pay in lieu of reinstatement.

D.     Order Defendant to make Render whole, by providing compensation for past and future pecuniary losses resulting from the unlawful

employment practices described above, in amounts to be determined at trial.

    E.    Order Defendant to make Render whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

    F.    Order Defendant to pay Render punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

    G.    Grant such further relief as the Court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

    Respectfully submitted,

    **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

    KARLA GILBRIDE
    General Counsel

    CHRISTOPHER LAGE

Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

*/s/ Veronica R. Cox*
Veronica R. Cox
Trial Attorney
Georgia Bar No. 712154
Veronica.rogusky.cox@eeoc.gov

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
Telephone: (470) 531-4837
Facsimile: (404) 562-6905