**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Equal Employment Opportunity Commission,

Plaintiff,

Case No. 1:24-cv-4140-MLB

v.

Osmose Utilities Services, Inc.,

Defendant.

________________________________/

**ORDER**

Plaintiff Equal Employment Opportunity Commission (on behalf of Decreshia Render) sues Defendant Osmose Utilities Services, Inc. under the Americans with Disabilities Act ("ADA") for failure-to-accommodate, disability discrimination, and retaliation for seeking a reasonable accommodation. (Dkt. 1.) Plaintiff moves for partial summary judgment on some of Defendant's affirmative defenses and Render's disability status, while Defendant moves for summary judgment on all of Plaintiff's claims. (Dkts. 48, 61, 62.) Magistrate Judge Larkins issued a Final Report and Recommendation ("R&R"), saying this Court should grant

summary judgment in Defendant's favor as to Plaintiff's retaliation and discrimination claims, grant summary judgment in Plaintiff's favor on Defendant's affirmative defenses, and deny summary judgment as to Plaintiff's failure-to-accommodate claim and Render's disability status. (Dkt. 72.) Both parties object. (Dkts. 75, 76.) The Court overrules the objections and adopts the R&R.

## I. Background

The parties do not object to the Magistrate Judge's detailed summary of undisputed facts. The Court adopts that summary and incorporates it by reference. (Dkt. 72 at 5–45.)

## II. Standards of Review

### A. R&R

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, SSA*, 825 F. App'x 685, 694 (11th Cir. 2020)[1]; *see*

[1] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive.

*United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). Ultimately, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Discussion

Neither party objects to the Magistrate Judge's conclusion that the Court should grant Plaintiff summary judgment on Defendant's third, fourth, and twelfth affirmative defenses as well as any laches-related defense. (*See generally* Dkt. 72.) The Court sees no clear error in that recommendation and adopts it. The parties also neither object to the Magistrate Judge's legal conclusions as to the elements of Plaintiff's claims nor suggest he misunderstood any issue of law. So the Court does

---

*See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

not repeat each of those legal standards and addresses the objected-to portions of the R&R.

### A. Failure-to-Accommodate

Plaintiff brings a failure-to-accommodate claim based on Defendant's denial of Render's requests to work remotely following her stroke. (Dkt. 1 ¶¶ 22–24, 44–48.) The parties dispute whether Plaintiff has satisfied each element required for that claim.

#### 1. Render's Disability Status

In addressing the disputed, narrow issue of whether Render has a disability, the Magistrate Judge properly concluded Plaintiff proceeds under the first prong of 42 U.S.C. § 12102(1), making the issue whether Plaintiff "has set forth sufficient evidence that Render's stroke, along with its attendant vision problems, limited a major life activity to a substantial degree." (Dkt. 72 at 48.) The Magistrate Judge says the Court should deny Plaintiff summary judgment as to Render's disability status because there was some evidence suggesting Render's vision was improving (or at least "fluctuating") over time and Plaintiff did not "direct[] the Court to testimony or evidence establishing the specific extent to which Render has lost her peripheral vision." (Dkt. 72 at

58–59.)[2] Plaintiff objects, arguing there is no dispute that Render "suffered a permanent loss of her right visual field" and the Magistrate Judge's finding that Render's vision fluctuated necessarily satisfies the low threshold required under the ADA Amendments Act of 2008. (Dkt. 75 at 4–10.)

The Court agrees with Plaintiff that Render's permanent vision loss could be a disability under the ADA because the statute expressly provides an individual is disabled if her impairment substantially limits her ability to see. 42 U.S.C. § 12102(2)(A). The problem for Plaintiff, however, is that it failed to establish—through its statement of material facts (and any citation to the record)—that Render's vision loss was permanent. And it's not the Court's job to "scour [uncited] portions of the summary judgment record . . . searching for evidence that might bolster" Plaintiff's contention. *Harrell v. Fla. Bar*, 915 F. Supp. 2d 1285, 1302 n.18 (M.D. Fla. 2011).

---

[2] Defendant also moved for summary judgment on Plaintiff's failure-to-accommodate claim based on its failure to establish Render was disabled. (Dkt. 62-9 at 10.) The Magistrate Judge denied summary judgment on that basis (Dkt. 72 at 46–58), and Defendant does not object to that portion of the R&R.

At best, medical records establish that Render "had a total superior temporal deficiency in her right visual field" (Dkt. 65 ¶ 29), but this does not establish that any such deficiency was permanent. Indeed, as the Magistrate Judge points out, Render's chiropractic records suggest her vision was improving after she had her first stroke and before she returned to work. (Dkts. 61-3 at 39, 41, 49, 55–57, 59; 72 at 59.) And, because the important question is whether Render was disabled at the time Defendant took actions that Plaintiff contends were adverse employment actions, *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014), the chiropractic records create a genuine issue of material fact as to whether Render was disabled when Defendant denied her request to work from home. Plaintiff seeks to undermine the chiropractor's records as unreliable, tangential to the treatment provided, and not establishing Render's total recovery. (Dkt. 75 at 6–7.) But, as the Magistrate Judge concluded, the chiropractor noted vision improvement, including a remark stating "[Render's] vision is fine now." (Dkt. 72 at 58-59.) The reliability or strength of that evidence is a factual argument for presentation to a jury. The Court thus denies summary judgment on this issue.

### 2. Qualification

As the Magistrate Judge properly noted, a "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position" at issue. *See* 42 U.S.C. § 12111(8). So, a plaintiff "must show either that [s]he can perform the essential functions of h[er] job without accommodation, or, failing that, show that [s]he can perform the essential functions of h[er] job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). The Magistrate Judge concluded Defendant was not entitled to summary judgment on its argument that Render was unqualified because she had sub-par job performance compared to other Locators. (Dkt. 72 at 61–63.) He found Defendant failed to identify—through citation to evidence—the specific metrics Render needed to meet to perform the essential functions as a Locator, let alone the minimum requirements for that position. (*Id.*) Defendant does not object to that conclusion.

The Magistrate Judge also concluded Defendant had not established in-office attendance was an essential function of Render's position such that her poor attendance precluded her from being

qualified. (*Id.* at 63–64.) Defendant objects to that conclusion, saying the R&R goes against "settled law that attendance is an essential function of any job." (Dkt. 76 at 18.) It also says the R&R mischaracterizes its argument when finding Defendant did not establish in-office attendance was an essential function of the job. Defendant insists it argued—not that she failed to work in the office—but that she "was not working" the required hours. (*Id.* at 20–21.) Defendant insists the issue is not in-office attendance but attendance to her job (whether in or out of the office). (*Id.*)

As to the latter, the Court does not believe the Magistrate Judge misunderstood the argument. The Magistrate Judge recognized Render's attendance problems after returning from FMLA leave. (*See generally* Dkt. 72.) He noted, however, Plaintiff presented evidence that Render requested to work remotely. (*Id.* at 23–24.) In other words, she asked for an attendance-related accommodation. Then the Magistrate Judge explained Defendant presented no evidence to establish "in-office attendance was an essential function of the Locator position, merely that it preferred it after an unsuccessful run in 2018." (*Id.* at 63.) The Magistrate Judge was not characterizing Defendant's argument as

focusing on "in-person attendance." He also did not ignore well-established law that job attendance (as opposed to in-person attendance) is an essential function of any job. (*Id.*) Rather, the Magistrate Judge recognized that, in the absence of evidence establishing the essential nature of in-person attendance, Defendant should have accommodated Render by offering remote attendance. (*Id.* ("And Render sought to do exactly that—work remotely—to accommodate her vision issues and associated driving problems.").) Since the undisputed evidence establishes Defendant did not offer that accommodation, the Magistrate Judge was correct in concluding Defendant failed to establish beyond factual dispute that Render cannot perform the essential functions of her job even with a reasonable accommodation. In other words, it is unknown whether she would have had the attendance problems that Defendant says precluded her from performing her essential duties, had she been allowed the requested accommodation: remote attendance. And that precludes summary judgment in the light of evidence she performed the job requirements before FMLA leave. (Dkt. 62-4 at 3 (noting that, as of February 2019, Render performed her job efficiently).)

### 3. Request for Accommodation

To give an employer enough information to respond effectively to an accommodation request, a plaintiff must "identify—at least in broad strokes—the limitations her mental or physical condition imposes" and "link her disability to her requested accommodation by explaining how the requested accommodation could alleviate the workplace challenges posed by her specific disability." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1335 (11th Cir. 2022). The Magistrate Judge concluded Render did not make a request for accommodation in August 2019 when she requested remote work because no evidence suggests she "provided any basis for [her] request" to work remotely at that time. (Dkt. 72 at 68.) She merely said she wanted to work remotely without explaining the reason. (*Id.*) He also found that limited discussion insufficient to trigger her supervisor's duty to engage in the interactive process to discuss potential accommodations. (*Id.* at 69–70.) In its objections, Plaintiff reasserts its argument that the admission by Scotch (Render's supervisor) that he knew Render's request to work from home "was related to her health" creates a genuine issue of material fact as to whether Render's request was reasonable. (Dkt. 75 at 10–14.)

The Court perceives no error in the Magistrate Judge's conclusion. The mere fact Scotch knew about some of Render's health issues did not impute knowledge about the specific limitations Render faced in performing her job. Scotch may have known Render "left Defendant's premises in an ambulance" and had "requested leave under the FMLA[,]" (Dkt. 65 ¶¶ 21, 33), but that does not suggest Render "link[ed] her disability to her requested accommodation by explaining how [working from home] could alleviate the workplace challenges posed by her specific disability." *Owens*, 52 F.4th at 1335. In other words, Plaintiff points to no evidence showing Render identified how her request to work from home was tied to any disability resulting from her stroke. Because Render failed to "provide enough information to allow [Defendant] to understand how the accommodation would address the limitations her disability present[ed]," she failed to request an accommodation in August 2019. *Id.* at 1334.

The Magistrate Judge, however, concluded Render requested a reasonable accommodation in September 2019 when she asked to work remotely a second time. (Dkt. 72 at 71.) The Magistrate Judge noted that, unlike her prior request, Render mentioned "she was scared to drive

due to the vision issues caused by her stroke." (*Id.*) In its objections, Defendant again raises arguments it did not raise before the Magistrate Judge. (*Compare* Dkts. 62-9 at 16 (arguing Render's own testimony does not create an issue of fact), 17 (arguing Render's request to telework was not reasonable because it was "based on personal convenience") *with* 76 at 23 (arguing request was not reasonable because driving is not a major life activity under the ADA), 24 (arguing request to work remotely for an indefinite period is not reasonable).)

The Court refuses to consider Defendant's new arguments. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009). That said, it finds no plain error in the Magistrate Judge's determination that there is a genuine issue of fact as to whether Render made a reasonable request for accommodation in September 2019 because "there is evidence that Render identified a statutory disability and explained generally how [that] particular accommodation would assist her." (Dkt. 72 at 74 (cleaned up).)

#### 4. Adverse Employment Action

"[D]iscrimination in the form of a failure to reasonably accommodate is actionable under the ADA only if that failure negatively

impacts" the employee's terms and conditions of employment. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023). The Magistrate Judge rejected Defendant's argument that it fired Render "solely" for performance reasons and that its alleged failure to accommodate was irrelevant. In doing so, the Magistrate Judge concluded "if Render had been allowed to work remotely, a reasonable factfinder could conclude that her attendance (even if remote) would have improved, and with it, her performance, at least in terms of her overall pole completion rate, since she would be present at work more often." (Dkt. 72 at 76.) He concluded there was evidence to suggest the denial of her requests to work remotely could have "served to accelerate the events leading to [Render's] discharge, and that engaging her in an interactive process to identify accommodations might have helped her remain in her position." (Dkt. 72 at 78.) Defendant objects and insists Plaintiff "presented no evidence to show the denial of Render's telework request affected her attendance or performance at all[.]" (Dkt. 76 at 7.)

The Court agrees with the Magistrate Judge's conclusion. A jury could conclude the requested accommodation would have enabled Render to perform better and keep her job, even though it might not have

remedied her memory issues. This is particularly true given evidence "calling into question Defendant's stated reason for the discharge." (Dkt. 72 at 77.) But there's more. In *Beasley,* the Eleventh Circuit explained an employer's failure to accommodate is actionable under the ADA when such a failure did not necessarily affect an employee's hiring or firing but still negatively impacted the terms, conditions, or privileges of the employment. 69 F.4th at 755. In that case, a deaf employee requested a written summary of team meetings that occurred before every shift and (at various times) an interpreter. *Id.* at 747–49, 51. His supervisor did not provide those accommodations. *Id.* Throughout his employment, the plaintiff was subjected to many disciplinary warnings for either missing work or being tardy, but he was never fired. *Id.* at 749–52. The Eleventh Circuit found the plaintiff had suffered an adverse employment action because of the employer's failure to accommodate because his inability to hear discussions during pre-shift meetings adversely affected the terms, conditions, and privileges of his employment. *Id.* at 755. Further, the defendant's failure to provide him an interpreter "to discuss the discipline he received after he missed work . . . . adversely impacted the amount of the pay raises [the plaintiff] received." *Id.*

The Court agrees with Plaintiff that the terms, conditions, and privileges of Render's employment could have been negatively impacted when Defendant denied her request to telework. (Dkt. 70 at 17.) Defendant's admission that "functions [of the locator position] could technically be performed remotely" (Dkt. 48-7 at 12) could allow a reasonable factfinder to conclude Defendant's denial of Render's remote work request necessarily affected her ability to perform her job duties. A reasonable factfinder, in turn, could find Render's inability to perform her job duties negatively impacted the terms, conditions, and privileges of her employment. The Court thus adopts the Magistrate Judge's recommendation to deny Defendant's motion for summary judgment on this claim.

**B. Discrimination**

The Magistrate Judge says the Court should grant summary judgment to Defendant on Plaintiff's discrimination claim because there was no evidence Scotch knew about Render's disability when he fired her. (Dkt. 72 at 79–85.) In reaching this conclusion, the Magistrate Judge found (1) Scotch's knowledge that Render had some health issues and left work in an ambulance did not establish his knowledge of a disability and

(2) Plaintiff presented insufficient circumstantial evidence to suggest Scotch learned of her disability from Swaney, in the light of both employees' testimony that Swaney never told him about it. (*Id.*) In its objections, Plaintiff remakes the same arguments it did before the Magistrate Judge and reiterates that "viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Scotch knew or should have known that Render was disabled[.]" (Dkt. 75 at 16.) Plaintiff also highlights two pieces of evidence: (1) Scotch's testimony that he knew Render requested to work remotely upon her return from FMLA and (2) Swaney's testimony that she had to retrain Render on the same things each day. (*Id.* at 16–18.)

As to the first, Plaintiff cites no authority holding an employer's knowledge that an employee took FMLA leave establishes knowledge of the employee's disability. Nor could it since the FMLA authorizes leave for many reasons apart from a disability. *See Williams v. Board of Tr. of Univ. of Ala.*, 128 F.4th 1208, 1212 (11th Cir. 2025) (listing "several reasons" for an employee to take unpaid leave under FMLA). That Scotch knew Render took FMLA leave "related to health reasons" does not equate to knowledge of her disability, let alone that any disability

lingered after she returned to work. *See Morales v. Ga. Dep't of Human Res.*, 2010 WL 4639279, at *8 (M.D. Ga. Nov. 8, 2010) ("Placing an employee on FMLA leave does not mean that an employer regards the employee as disabled for ADA purposes"), *aff'd*, 446 F. App'x 179 (11th Cir. 2011).

As to any communication that Swaney might have had with Scotch prior to Render's termination, Plaintiff provides no argument undermining the Magistrate Judge's determination that any such conversation amounted to "conjecture [by Plaintiff] about what [Scotch] *might* have been told[,]" which is not sufficient circumstantial evidence to counter a "decisionmaker's direct denial [of knowledge of disability]." (Dkt. 72 at 83–84 (citing *Clover v. Total Sys. Servs.*, 176 F.3d 1346, 1355 (11th Cir. 1999) and *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1054–55 (11th Cir. 2020)).[3] The Court finds no error in the Magistrate

---

[3] *Clover* and *Martin* concerned Title VII discrimination claims. Recognizing this, the Magistrate Judge noted "these employment cases . . . [are] sufficiently analogous to be controlling here[.]" (Dkt. 72 at 83 n.45.) Neither party objects to this, and the Court finds no plain error in the Magistrate Judge's application of these cases to Plaintiff's ADA claims.

Judge's determination that Defendant is entitled to summary judgment on this claim.

**C. Retaliation**

The Magistrate Judge concluded Plaintiff's retaliation claim should be dismissed for the same reason: a lack of direct evidence Scotch knew of Render's disability (and thus any activity protected by the ADA) when he made the decision to terminate her and evidence of a "daily checklist" Swaney emailed to Render—with Scotch copied—did not put Scotch on notice that Render had engaged in protected activity. (Dkt. 72 at 86–89.) Plaintiff's objections merely restate the evidence before the Magistrate Judge and argue—in a conclusory manner—that the Magistrate Judge erred in recommending summary judgment in Defendant's favor. (Dkt. 75 at 19–21.) Plaintiff does not rebut the Magistrate Judge's reasons for rejecting each piece of evidence Plaintiff contends establishes causation.

The Court finds no error in the Magistrate Judge's conclusion that Defendant is entitled to summary judgment on Plaintiff's retaliation claim. While Scotch knew Render had "left work in an ambulance due to a medical emergency" and "was on leave for two months due to the medical episode[,]" no evidence suggests Scotch knew Render had a

disability or engaged in activity protected under the ADA when she asked to work remotely.[4] And that "Swaney directly reported to Scotch about [Render's] performance issues" (Dkt. 75 at 20) doesn't impute knowledge to Scotch about Render's alleged disability or accommodation request. This is consistent with *Martin*, in which the Eleventh Circuit concluded a plaintiff's insistence that a decisionmaker was aware she engaged in protected activity—because that decisionmaker spoke with another employee who knew about protected activity—did not trump "unrebutted evidence that the decision maker did not have [that] knowledge[.]" 959 F.3d at 1053–54.

**D. Convincing Mosaic**

The Magistrate Judge also determined Plaintiff failed to present a convincing mosaic of disability discrimination and/or retaliation. (Dkt. 72 at 91.) As part of this, he concluded the evidence Plaintiff offered to suggest Defendant's stated reason for firing Render was pretext for discrimination or retaliation failed as a matter of law because Plaintiff

[4] This is consistent with the Court's finding that Render made an actionable request for accommodation when she asked to work remotely the second time. That's because she asked Swaney, not Scotch, the second time around. (Dkt. 70-5 ¶ 41.)

presented no evidence Scotch—the decisionmaker—"had any knowledge of Render's disability or her protected activity[.]" (*Id.* at 91–95.) In its objections, Plaintiff raises two points: (1) the Magistrate Judge's conclusion that Render's performance could have improved had she been permitted to work from home necessarily proves Render did not fire her for poor performance and (2) Scotch offered "shifting reasons" for Render's termination. (Dkt. 75 at 21–23.)

Plaintiff did not argue about Scotch's allegedly shifting reasons before the Magistrate Judge. So the Court does not consider that argument now. *Williams*, 557 F.3d at 1291. And the Court is unsure what to make of Plaintiff's first point. As best as the Court can tell, Plaintiff argues a jury could infer discrimination from the fact Scotch fired Render allegedly for poor performance after refusing her request to telework, which could have allowed her to improved her performance. Plaintiff offers no binding authority suggesting that inferential leap. And, in the absence of evidence Scotch knew of Render's disability or protected activity, the Court does not see how a failure to permit some accommodation points to discrimination or retaliation. Indeed, "[a]n employer articulates a legitimate, non-discriminatory reason for

termination where an employer had an honest, good-faith belief in the reason for termination, even if it turns out that the employee was mistaken in the belief." *Holmes v. West Palm Beach Hous. Auth.*, 309 F.3d 752, 755 (11th Cir. 2002). The fact Render's performance might have improved had Defendant allowed her to work remotely is not demonstrative of whether "discrimination was the real reason for [Render's termination]." *Ismael v. Roundtree*, 161 F.4th 752, 761 (holding the inquiry as to whether discrimination was the real reason for an adverse action "holds the same focus as the convincing mosaic standard") (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993)). The Court agrees with the Magistrate Judge's conclusion that Plaintiff fails to present evidence of a convincing mosaic of disability discrimination or retaliation.

## IV. Conclusion

The Court **OVERRULES** the parties' Objections (Dkts. 75, 76), **ADOPTS** the Magistrate Judge's Final Report and Recommendation (Dkt. 72), and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Partial Motion for Summary Judgment (Dkt. 48) and Defendant's Motion for Summary Judgment (Dkts. 61, 62). Specifically, the Court **GRANTS**

summary judgment to Plaintiff on Defendant's third, fourth, and twelfth affirmative defenses as well as any laches defense Defendant belatedly seeks to assert. The Court **GRANTS** summary judgment to Defendant on Plaintiff's discrimination claim, retaliation claim, and failure-to-accommodate claim based on Render's first request to work remotely. The Court **DENIES** summary judgment to Defendant as to Render's disability status and Plaintiff's failure-to-accommodate claim based on Render's second request to work remotely.

**SO ORDERED** this 25th day of September, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE